Energy Corporation at el. We'll hear first from Mr.  Mr. Charest. On behalf of the Fort Worth Four Street Partners, we'll call them the Fort Worth Partners. I just want to open by reading that when construing a contract, the court's primary goal is to give effect to the written expression of the party's intent. Now it's a pretty generally accepted maxim, but I say that because I don't want to lose the forest for the trees of what we've got going on here. The question before the court is whether to, and if so how, give effect to paragraph 17 from the surface use agreement between the parties. And the briefing really focused on the defenses, the ways around why you should give effect to that paragraph. But it's important to remember that in December 2005, the parties entered into a 22-paragraph agreement, the surface use agreement. Paragraphs 1 through 13 imposed severe restrictions and limitations on how and where operations for drilling and producing oil and gas could take place. Paragraphs 14 and 15 provided for an override or minimum override. Paragraph 16 described the rights for a central facility and a water supply tank. Paragraph 17 imposed a payment obligation on the amount of land used. Paragraph 18 restricted assignments by the parties. Paragraph 19 was indemnity and insurance. Paragraph 20 conveyed all surface rights by the lessee back to the surface owners, the partnership, so that all the rights that the drilling operator had were pursuant to the surface use agreement. And then 20 and 21 were basically about termination and the term of the contract and sort of the The parties operated under that contract as designed for over a year and a half. The operator drilled a well, which meant it built some of the facilities that were addressed in paragraph 17. And then in July of 2007, a second transaction took place where the Fort Worth partners sold the surface of the land to Chesapeake. They also sold another parcel nearby. And that transaction required the amendment of three agreements, being the surface use agreement, the lease between the partnership and Chesapeake, and the operating agreement between the partnership and Chesapeake. The master amendment vis-a-vis the surface use agreement struck specifically paragraphs 1 through 13 and did not strike any other provision expressly. It said specifically, so that the Fort Worth partners shall no longer be entitled to restrict or limit how or where operations for drilling, operating and producing oil and gas or other land, the parties agreed to delete any provision which purports to limit or restrict Chesapeake's right to enter upon or use any portion of the surface for those reasons, expressly including paragraphs 1 through 13. Didn't it say including but not limited? Yes, ma'am. It did. But the not limited needs to be understood through the concept of what exactly they're trying to do, what rights they're trying to obliterate, which are the Fort Worth partners' rights to restrict or limit how or where operations for drilling, operating and producing gas took place. That's the context of it. And you have to read both the sentence saying these rights are deleted with the context of the sentence before it under El Paso refining, for example. Wouldn't it have been better to make a specific reservation of the paragraph 17 deferred compensation obligation when all this revision was taking place? I mean, I'm sure that would have been a way to do it, of course, but then you would have had to have done a specific reservation for paragraphs 14, 15, 16, and all of them. What the parties did to address the overrides were worth more than that, well more than that, because they have an override in every well that Chesapeake drills in the entire halo around both these properties. The overrides were worth far in excess of the $2 million. And to your point, and I think this is the core question, the parties could have deleted paragraph 17 expressly. They did so for paragraphs 1 through 13, and they specifically amended paragraph 14. And then the rest of the implication, and the argument we're hearing from Chesapeake is that the sale of the surface of the land has these sort of legal effects, and therefore, they now have the benefit to the payment. But the important point on that is in the master amendment, to your point about what they could have done or couldn't do, they included a specific provision on what effect, if any, to give the sale of the surface. And the parties said, the parties agreed to acknowledge the terms of provision of the lease, the surface use agreement, and the joint operating agreement as amended hereby shall remain in force and effect, and here's the important part, notwithstanding the fact that Chesapeake has acquired fee simple title to the surface of the lands. They tell us that the sale of the land does not change the rest of the structure. You have fundamentally six different agreements going around, three of them amended by the master amendment, and you have a lease, a JOA, five other agreements. And you have this very complex structure, and you have the sale of the land, and they're saying, look, when we sell the land, we change what we change, but we're not going to change anything that addresses the sale of the land that the parties agreed to at the time. And now, years later, they're saying, oh, you sold us the land, and therefore we receive the benefit. Well, the agreement says that's exactly what doesn't happen. And I think the district court failed to give effect to that provision properly. When was the payment due? The payment was due in 2011. That's been a while. What took so long? Well, we sued them in, I think, 14 or 13, in that frame. The relationship, like a lot of landowners with Chesapeake, is not great, and so there was a lot of issues about getting the assignments, getting everything up to pay. And when finally they came to us, it was a litany of issues that we brought to Chesapeake. We resolved most of them, in fact, all of them by settlement, and this one issue remained, and we just put it to trial. And we, in fact, put it to cross-motion for summary judgment, which was denied on our part and granted in favor of Chesapeake. Could I ask you a very simple question? Please. You could disabuse me and get on to the rest of it, but this contract was entered between your client and originally Dale Resources. And at the very end, the last, not the last paragraph, but the next third from the last, says that the terms, conditions, provisions of this shall be covenants running with the land and shall be binding upon and here to the benefit of the working interest owner, the surface owner, and each of their respective successors, legal representatives, heirs of signs, lessees, and sublessees. This consideration recited herein are contractual in nature and not mere recitals. Now, to me, that seems to say that the whole thing is a covenant running with the land, and if it's not, then how can, if it's just a personal obligation, how can that affect the successors, the Chesapeake entities? Your question, frankly, leads to Part 2 of the discussion. There are, not only in the surface use agreement, but also in the Master Amendment, two recitations that generally provided that the promises here run with the land. The law of this circuit, as recognizing Texas law, is that those broad statements, if anything, talk about the intent of the parties, and they don't mean, let me say it this way, in order for a right to run with the land or an obligation to run with the land, that right or obligation must touch and concern the obligor or obligees' rights in the land. We can agree all day long that we want our right to run with the land. If it doesn't touch and concern the land, then it doesn't. So these sort of provisions, what they were there for was, frankly, when I talked about the halo, the partners were terrified that Chesapeake would grant this right and then just do some land swap, and then there would be a different operator in all these areas in the halo, and their rights would go away. So those rights, those rights to receive overrides, and more importantly, because you have to do it separately, the burden on Chesapeake to give the overrides to the partners, that would affect the land. And your question also teases out another core distinction, which is you have to look at both the benefits and the burden separately. And so when we're talking about here in this case under Paragraph 17, it is the Fort Worth partner's right to receive cash payment for the use in the land. There's no question that the burden, the obligation to pay runs with the land. And so when you have the succession from Dale to Chesapeake to Chesapeake land or to whomever, whoever owns those rights owes back an obligation because it touches and concerns the land. But the recipient, the beneficiary, the partners, the receipt of cash payment doesn't touch and concern the land. It doesn't affect their, the Fort Worth partner's, rights or interests or use in the land. And that's another fundamental mistake that the district court made, which she looked at the Energy Tech case. What is the present interest of your client in restricting the usage of the land? They have none. They have just only the right to payment, but that right to payment doesn't change their right to the land at all. And that's the point. It's personal to them, the right to payment. The obligation to pay, that runs with the land because you have to look at just the benefit and then you look at just the burden. Sometimes the burden runs. Sometimes the benefit runs. And you can't, you can't look and say, well, because the burden runs, which here it undoubtedly does, therefore the benefit runs. The Texas courts require and the Fifth Circuit has recognized a separate analysis. But the benefit was timed. It ended after X number of years. Whenever, whenever it was supposed to be paid, it would end because the obligation came due. It doesn't end, right? But it doesn't continue. You don't get more deferred compensation. Correct. It's as of 2011, July of 2011, I guess, or December, I forget which one. Right. It was that day, six years after entering into the surface use agreement, payment was due. Because the ownership changed. Right. And I think the fundamental question, the way I kind of get my head around the whole notion of running with the land or not is if I can assign that right to whomever, then it doesn't run with the land. Okay? So I, these partners enjoy the right to be paid. They could have done nothing else with the land at all, and they still would have had the right to be paid. And that's why it doesn't affect their rights, their rights and interests in the land. All the cases you see, you see burden cases where, oh, well, we're going to have to pay for, you know, a pipeline going across my property, or we're going to have to pay you for the right to use a pipeline that goes across your property. Those are the obligation to pay. When you have the obligation, it's a burden. When you're the recipient, it's the benefit. And I posit I couldn't find a single case anywhere where the right to receive a cash payment was a benefit. I'm sorry, was it ran with the land. And it's just really important to touch on the fact that the Energy Tech case, just misstated, frankly, when it says, does the, in the Chesapeake brief, tries to get into it a little bit, does the right to receive payment run with the land? What Energy Tech talked about was, in fact, whether the obligation to pay the recipient run with the land. Because you have, the original deal was between the original obligor and original obligee for the payment. The obligor got sold, sold the pipeline, and Energy Tech had to pay the NUCO. Energy Tech went into bankruptcy and then sold the pipeline. And the question is, does the sale of the pipeline going through bankruptcy strip that covenant? So if it, and therefore, there's no more obligation to pay. Let me ask you another, a related question, I guess. The, your clients also required that the party they contracted with deal resources later, Chesapeake, must drill a certain number of wells within a certain time. Is that, would that not run with the land either? That would be, that would be, you could still control that kind of right, even though you sold the land? I think that right. You no longer have even an interest in the surface? I think that right would run with the land, but that right was stricken through the amendment to the surface use agreement. The only remaining right, the number, the requirement to drill a certain number of wells was expressly deleted from the surface use agreement because the parties intended to take that type of control away. And then just lastly, in the last minute I've got, there's the notion that you can't define what these terms mean. The surface, sorry, the operational facility, the operational site, the central facility, and frankly, the water supply tank. Fundamentally, you can look to the conforming amendments, you can look to the ordinary usage, or you can ask experts, but the court literally put her hand, put the hand over the terms and said, I just can't read them because they're deleted. But the deletion with respect to the second two was only by implication. And even if the words were, the definitions were deleted, those words still have meaning, and the court just gave no effect to them at all. Thank you, sir. Well, you have some time on rebuttal. Mr. Ballew? Yes, Your Honor. Thank you. Jeff Ballew, representing the Chesapeake defendants. May it please the court. The district court's summary judgment order is sustainable on two independent grounds. The first one was addressed at length a moment ago. That is that the surface use payment obligation was a provision that ran with the land, and Fourth Street, as the district court found, lost that right to that land to Chesapeake Land in 2007. So no one gets paid that money? Well, Chesapeake Land is entitled to it from Chesapeake operating. And secondly, the district court found that the parties expressed deletion of all provisions of the agreement that the surface use agreement that restrict or limit the surface use were eliminated. And it defies common sense to say that a surface use agreement, first of all, is not appurtenant to the surface, which is entirely conveyed together with all agreements appurtenant to it in that 2007 conveyance to Chesapeake Land. All right. But what I'm having a hard time with is that it's deferred compensation. So for X number of years, they got to use the land, and then when the period of trauma is over, then they would pay the compensation. So the person who allowed the company that allowed that to happen isn't getting paid. Your client wants the money. So it seems like if you're deferring something, it's owed, and then it's going to be paid at a later date. But it doesn't seem equitable or even normal that after all this time deferring the payment, the payment would go to an entity that had nothing to do with the land or whatever during those years. It's not a deferred payment. The parties nowhere described it as a deferred. I thought they called it a deferred consideration. No, they did not. What they called it was a damage payment for surface use. That's why it touches. Still, it covered a certain number of years. It covered a majority of the years it covered. The payment wasn't to take place until those years had passed. The payment, that didn't make it deferred. The payment was for the use of the surface for oilfield operations during the first six years that the surface use agreement was in effect. But the payment was deferred. It wasn't required timely. It was put off to a later date. I suppose Your Honor could phrase it that way. But the reason the payment wasn't due until six years after oilfield operations commenced was because it could only be calculated based upon the square footage used in three specifically defined areas. Right. During that six-year period. It couldn't be calculated. And, in fact, if Chesapeake or Dale Resources, its predecessor, had never commenced oilfield operations, then there would have been no surface use payment due. Because there would be no surface use. There would be no surface use, which, again, it establishes that the surface use payment touches and concerns the land. That's one of the five essential elements under Energy Tech that determine whether or not a covenant runs with the land, whether or not Forestry can legitimately claim it, whether or not all contracts are pertinent to it, or whether it can say this was just a personal benefit for us, even if we never owned the land. So what the law says is if that right, which the parties stipulated was a covenant running with the land, touched and concerned the land, among other issues, that they intended it to run with the land, which the parties' agreements say they do, and three other elements which the parties don't dispute, including that the covenant relate to a thing in existence like the land, and that there be privity of the state, which nobody contests. Under all of the elements established by Energy Tech, recognizing and basing the discussion of those elements on a Texas Supreme Court case, the district court correctly found that the right to the surface use payment was a covenant running with the land to the extent that it survived at all. The master amendment's deletion of all terms that imposed a limitation on the use of the land. The surface use payment itself, because it imposed a penalty in essence or damages payment for each additional square foot of land that was used within these three narrowly defined areas within the broader surface track, was in itself a limitation on the use of the land. It, therefore, was stricken by the master amendment. Our position, Your Honor, is that the obligation to make the surface use payment no longer exists. Secondly, the... You're not going to get the money. Well, the money is no longer due. Once the master amendment... It would be paid to Chesapeake. Well, it would be paid from Chesapeake to Chesapeake because Chesapeake operating as a separate affiliate. Is someone going to be paid? I think the obligation is essentially extinguished. Okay. The... By confusion? Sorry, Your Honor.  That's what we call it in Louisiana. I see. All right, Your Honor. In the obligation to yourself, it's extinguished. Oh, the merger doctrine, essentially, yes, Your Honor. By confusion. That's what we call it in Texas, a merger. But the second component of the court's decision, the district court's decision, to determine that the obligation was unenforceable was that the only way you can calculate the amount of the surface use payment is by reference to these definitions in the contract where the surface use agreement imposed limitations on what Chesapeake or Dale Resources, its predecessor, the operator, could do, where it could do it, how it could do it, what the aesthetics would look like. Those were in these paragraphs. One of them was in paragraphs 1 through 13, which were expressly deleted, and then two others were in paragraph 16, which was not expressly deleted, but which also contained substantial and severe limitations on the use of the surface. So when the master amendment, the parties agreed, anything in the surface use agreement that limits the ability to use the surface is hereby eliminated. That eliminated those definitions. If you don't know, if those definitions aren't there, there's no basis to determine the amount of the payment that would be due under paragraph 17, because paragraph 17 relied entirely upon those definitions. And also, the only record evidence of claim damages is the evidence from Fourth Street's expert as to what the payment would have been had the agreement never been amended and had the definitions that were deleted continued to be applied. So... Why wasn't paragraph 17 deleted? Paragraph 17 was deleted, in my view, Your Honor, because that imposed a limitation. But it wasn't explicitly. It was not. It can't be calculated. Well, that's a — those are two alternative arguments. Our view, Your Honor, is that because any provision of an agreement that compels an additional payment for each additional square foot of surface used in specifically defined areas constituted a limitation on the mineral interest owner's right to use the surface. Keep in mind, under Texas law, the mineral interest estate is dominant. Had the surface use agreement never been executed, there would have been no restriction. Unfettered reasonable use would have been available to Dale Resources in Chesapeake for extracting the minerals. So the surface use — it defies reality to say that the surface use agreement, which sole purpose, as Mr. Cherist acknowledged, was to limit the ability of the mineral interest estate owner to use the surface, that that somehow does not touch and concern the land, makes no sense. So it is correct that the party's mere stipulation that a covenant touches and concerns the land and is a covenant running with the land is not dispositive. There is a test, and it was expressed by this court in Energy Tech, based on Texas law. It's a five-part test. The district court correctly applied it. The only two elements that were in dispute here were whether the surface use payment provision touched and concerned the land, which it did, and whether or not the parties intended it to run with the land, which it did, which they did. The — the arguments that the payment — the surface use payment obligation touched and concerned the land and therefore ran with the surface estate is independent of the argument that the surface use payment obligation was extinguished by the master amendment. In order for the Fourth Street to prevail in this case, it would have to establish that the district court erred in both of those conclusions. That's what they're arguing. That's what they're arguing. And they're not correct. The district court's — the district court correctly determined that the surface use payment provision met all of the requirements to run with the land under Energy Tech. The benefit and burden distinction is a red herring here. It doesn't make any difference whether you evaluate benefit and burden separately or together because they're the flip side of the same coin. You calculate the amount of the payment based upon the surface use used, the amount of surface used. You can't — it doesn't exist in a vacuum. It's not deferred compensation for, as Fourth Street originally contended, the mineral lease. And secondly, the payment was intended by the parties to be a covenant running with the land. If all those elements are met, then it belongs to Chesa — the right to receive it belongs to Chesapeake Land and not to Fourth Street. How did Texas law getting this — arrive at this complicated scheme? I mean, why isn't it just a matter of whether the parties agreed it would run with the land or not? I candidly don't have an answer for Your Honor. The — it is well-established case law. It goes back many decades. And there is a five-part test. And again, the district court correctly applied it. And again, the only two issues that were presented in this context of the facts of this case are whether the parties intended the covenant to run and whether the covenant touched and concerned the land. The one that has been most heatedly debated is whether the obligation to make the surface use payment touches and concerns the land, whether it benefits the land and burdens the land. And again, those are flip sides of the same coin. However you do the analysis, the answer is the same. The surface use agreement obviously touches and concerns the land. Unless the Court has further questions, I cede the remainder of my time. Thank you. Thank you, sir. Mr. Cherish. Thank you, Your Honor. You just heard it right there where he said the burden runs with the land. We all acknowledge the burden runs with the land. But Texas law requires a separate analysis of whether the burden runs and whether the benefit runs. This Court has repeatedly recognized that requirement. I'll cite you to the record to Mobile Oil Corp. 385 F. 2nd, 951, where the Court quoted at length, if the promisor's legal relation in respect to the land are lessened, his legal interests are rendered less valuable, the burden of the covenant runs with the land. If the promisee's legal relationships are increased, his legal interests as owner are rendered more valuable, and the benefit of the covenant touches and concerns the land. You have to do this burden and benefit analysis separately. He keeps talking, Chesapeake keeps talking about the burden runs, the burden runs. Agreed. The right to payment does not touch and concern the land. You can give me a million dollars or one dollar. I have no more right to enter, use, sell, convey, enjoy, or anything the land. The cash payment has no necessary relationship vis-a-vis my ownership rights in the land, and that is the question. But isn't it determined by the use of the land? The number is determined by use of the land, but that's not the key. That's an error they keep pulling the Court back into. The question is whether it changes the obligees, the beneficiary of the promise, that person's rights in the land. It's a hard concept to get around, but I finally got my head around it. As the owner, if I have a benefit, that benefit affects my rights in the land. I can go use it, sell it, enjoy it, whatever. Then that benefit runs with the land. And, for example, again in Mobile, the benefit ran with the land because the benefit was that the mineral company would bury its pipelines and the surface owner could farm. That's a benefit to you because the dominant estate could just leave the pipelines up above. But the payment, the fact that you calculate payment by the number of acres used or square footage used doesn't increase or decrease the recipient of the payment's rights in the land. It may affect the payor's rights in the land, and that's why it does run with the land, but the two are separate. The analyses are separate. And the Texas law in that is crystal clear, and this Court's adherence to that is crystal clear. And I listened really carefully, and I hope everyone did here, too. You never heard Chesapeake articulate how the benefit to payment affects the Fort Worth Partners' rights to the land because it just does not. So you would say that the district judge did not apply that test correctly? Absolutely, Your Honor. The district court absolutely analyzed the burden, satisfied itself that the burden ran with the land, and that was it. And that's the point one in our argument is that that fundamental legal analysis was just dead wrong. But the good news is we're on de novo review, it's on their motion for summary judgment, so you have the full authority to look over the entire record and apply it correctly and find that the benefit did not run with the land. And once you conclude that, it flips because now there's nothing stopping the payment and the payment should come to the Fort Worth Partners except for the issue of the indefiniteness of the terms. Which if you accede to the notion that Paragraph 1, which is true, was deleted by the parties, and Paragraph 16A and B were deleted by implication, you still have the words operational site, central facility, and water supply pit. If those words are not gone, they're still there, and they still have meaning. And if the court's confused at all as to what those words actually mean, if you were to look to industry usage, you would look to the usage between the parties, you could get extrinsic evidence. You can't just throw up your hands and say, golly, gee, I don't know what the word operational site means. And that's just what it is. It's a backer way to say the whole thing was deleted by implication. The whole obligation was deleted by implication. Which gets me to my final point. The lease between the partners and Chesapeake had itself, separate in part from Paragraph 17 of the surface use agreement, a surface damages provision, Paragraph 21. That lease, that provision was a value of about $500,000 if you tease out all the numbers that were in there. The parties expressly deleted that in the master amendment. They expressly deleted one obligation to pay for the surface of the land, and they did not delete the other one. Now, either they just messed up, or that was on purpose. And on summary judgment, I posit, you can't just assume that they messed up. They did it on purpose. And you can tell they did it on purpose because of the non-merger provision. The sale of the land makes no effect on anything that we didn't touch. And they knew about the issue of surface damages. They struck it from the lease. They left it in the surface use agreement. The payment was deferred for six years, and it's due. Thank you.